UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------X

| | | |
|---|---|---|
| In re: | : | |
| | : | Chapter 11 (Dismissed) |
| SPA CHAKRA, INC., *et al.*, | : | |
| | : | Case No. 09-17260 (SMB) |
| Former Debtors. | : | |

----------------------------------------------------------------X

| | | |
|---|---|---|
| SPA CHAKRA FIFTH AVENUE, LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| -- against -- | : | Adv. Pro. No. 11-02151 (SMB) |
| | : | |
| CORNELIA FIFTH AVENUE LLC, | : | |
| *et al.*, | : | |
| | : | |
| Defendants. | : | |

----------------------------------------------------------------X

**MEMORANDUM DECISION
DENYING MOTION FOR SANCTIONS**

**A P P E A R A N C E S :**

NEIGER LLP
*Special Counsel to the Plaintiff*
151 West 46th Street, 4th Floor
New York, NY 10036

> Edward E. Neiger, Esq.
> Of Counsel

GREENBERG, DAUBER, EPSTEIN & TUCKER P.C.
*Attorneys for Defendants GVK Limited Partners,
  Kolber Properties LLC and George Kolber*
One Gateway Center, Suite 600
Newark, New Jersey 07102

> Russell S. Burnside, Esq.
> Kathryn B. Allibone, Esq.
> Of Counsel

FORMAN HOLT ELIADES & YOUNGMAN LLC
*Attorneys for Jonathan S. Bodner*
80 Route 4 East, Suite 290
Paramus, New Jersey 07652

   Harry M. Gutfleish, Esq.
    Of Counsel

**STUART M. BERNSTEIN**
**United States Bankruptcy Judge:**

  GVK Limited Partners ("GVK"), Kolber Properties, LLC, and George Kolber ("Kolber"

and together with GVK and Kolber Properties, the "Kolber Defendants" or the "Movants"),

defendants in the above-captioned adversary proceeding (the "Adversary Proceeding"), have

moved for sanctions against Neiger LLP ("Neiger"),[1] the attorney of record for the plaintiff, Spa

Chakra Fifth Avenue, LLC ("Spa Chakra" or the "Debtor"), under Rule 9011 of the Federal

Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), 28 U.S.C. § 1927 and the Court's

inherent authority (the "Motion").  They also seek sanctions against Edward E. Neiger, Esq.

("Edward"), a partner in Neiger, and Jonathan S. Bodner, Esq., a former Neiger associate who

worked on the Adversary Proceeding.  The Movants contend that the Adversary Proceeding was

"utterly frivolous" and a "blatant attempt to extort a settlement to increase legal fees for

plaintiff's counsel, Neiger, LLP."  (*Brief in Support of Motion by GVK Limited Partners, Kolber

Properties LLC, and George Kolber for Sanctions*, dated Oct. 18, 2012 ("*Kolber Brief*"), at 2-3

(ECF Doc. # 22).)

  Neiger has raised several procedural objections to the part of the Motion under

Bankruptcy Rule 9011 and also contends that the claims were not frivolous.  (*See Memorandum

---

[1]  On September 1, 2012, Neiger merged with another law firm, ASK LLP.  Neiger continues to wind down its existing matters including the instant one.  (*See* Letter, dated Oct. 22, 2012 (ECF Doc. # 23).)  Unless otherwise indicated, citations to "ECF" refer to the electronic docket in the Adversary Proceeding.

*of Law in Support of Objection of Neiger LLP to Motion of GVK Limited Partners, Kolber Properties, LLC and George Kolber for Sanctions*, dated Nov. 30, 2012 ("*Opposition*") (ECF Doc. # 28).) Bodner argues that the Court lacks personal jurisdiction over him and that he has been denied due process of law.  Edward did not raise any separate personal defenses, and any further references to Neiger include Edward and the firm.

For the reasons that follow, the Motion is denied.

## BACKGROUND

This Adversary Proceeding centered on the Spa Chakra's purchase of the assets of Cornelia Fifth Avenue, LLC ("Cornelia") pursuant to an Asset Purchase Agreement, dated Feb. 6, 2009 (the "Agreement").[2]  The Kolber Defendants were lenders to Cornelia, and at the time of the Agreement, Cornelia owed them $1,285,009.02.  Richard Aidekman and Ellen Sackoff, the principals of Cornelia, had guaranteed the debt.  The loan was in default, and Spa Chakra and its affiliate Spa Chakra, Inc. executed a Guaranty of the debt to induce the Kolber Defendants to forbear from exercising their right to receive full payment.[3]

On November 30, 2009, an involuntary chapter 7 petition was filed against Spa Chakra.  On December 22, 2009, the case was converted to a chapter 11, and relief was ordered.  By order dated August 16, 2010, Spa Chakra retained Neiger as special litigation counsel on a contingency fee basis to bring litigation in connection with the sale transaction as well as other claims.  (*See Kolber Brief*, Ex. B.)

---

[2]        The Agreement is attached to the *Kolber Brief* as Exhibit L.

[3]        The Guaranty is attached to the *Kolber Brief* as Exhibit A.

Spa Chakra, through Neiger, commenced the Adversary Proceeding on May 22, 2011.

(*See Complaint* (ECF Doc. # 1).)  The defendants included Cornelia and certain affiliates (the

"Cornelia Defendants"), the Kolber Defendants, Terbell Partners, Ltd. and Harriet A. Terbell

(collectively, the "Terbell Defendants") and unidentified John Does and Mary Roes.  The

*Complaint* contained nine counts.  In the main, it charged all of the defendants with breach of

contract, some variation of fraud and conspiracy to defraud, violations of the Racketeer

Influenced and Corrupt Organizations Act ("RICO") and conspiracy to violate RICO.  The

claims revolved around the following misrepresentations, omissions and breaches of contract

relating to the Agreement:

1. The Agreement stated that Cornelia's outstanding gift card liability was $782,633.58, but the actual liability was over $2.5 million, and Richard Aidekman, Cornelia's principal, altered Cornelia's business records to hide the true liability.  (*Complaint* at ¶¶ 29-31.)

2. The Agreement did not disclose that Cornelia owed approximately $637,000 in sales tax liability.  (*Id.* at ¶ 32.)

3. Cornelia failed to make a number of payroll payments before the closing, resulting in additional liability to Spa Chakra.  (*Id.* at ¶ 33.)

4. Although the Agreement stated that Spa Chakra would not assume any liability under Cornelia's employee benefit plans, "Cornelia Fifth terminated its employee benefit plans and Spa Chakra had no choice but to assume liabilities with respect to employee benefit plans, causing substantial increases in Spa Chakra's benefit plan ratings and premiums."  (*Id.* at ¶ 34.)

5. Finally, the "financial statements and related representations made by the Defendants individually and/or collectively to Spa Chakra did not fairly or accurately present the financial condition of Cornelia Fifth," and "the Defendants individually and/or collectively knew that liabilities were grossly understated in the [Agreement]."  (*Id.* at ¶¶ 35-36.)

The Kolber Defendants were not parties to the Agreement—the source of the misrepresentations, omissions and breaches.[4]  The *Complaint* nevertheless named them as defendants on the breach of contract, fraud and RICO claims, apparently on the basis that they pressured Cornelia to enter into the transaction with actual or constructive knowledge of the misrepresentations in the Agreement because they wanted to get repaid and because they selected the broker and paid its fees.  (*Id.* at ¶¶ at 37-39.)

About two months later, on July 20, 2011, the attorney for the Kolber Defendants emailed a nine-page letter to Bodner with the heading "**FOR SETTLEMENT PURPOSES ONLY PURSUANT TO F.R.E. 408**" (the "July 20 Letter").[5]  The July 20 Letter provided a detailed outline with citations to legal authority setting forth the Kolber Defendants' position that the plaintiff's claims against them were frivolous.  The letter threatened at several points to seek Rule 11 sanctions if the *Complaint* was not withdrawn, and stated "this letter shall constitute the required notice pursuant to *Federal Rule of Civil Procedure* 11(c)(1) that, unless the *Complaint* against the Kolber defendants is withdrawn, we shall seek frivolous litigation sanctions against Spa Chakra and its counsel."  (July 20 Letter at 2.)

On August 19, 2011, Kolber's counsel emailed a second, two-page letter to Bodner with the same heading, "**FOR SETTLEMENT PURPOSES ONLY PURSUANT TO F.R.E. 408**" (the "August 19 Letter").[6]  The letter apparently responded to follow-up questions raised by

---

[4]       At oral argument, Neiger's attorney contended that the Kolber Defendants were parties to the Agreement because they received the Guaranty.  The position lacks merit.  While the Guaranty was necessary to allow the transaction to proceed without the interference of collection efforts by the Kolber Defendants, it was nonetheless a separate agreement that related to the outstanding debt rather the sale of Cornelia's assets.

[5]       The July 20 Letter is attached to the *Kolber Brief* as Exhibit J.

[6]       The August 19 Letter is attached to the *Kolber Brief* as Exhibit K.

Bodner after his review of the July 20 Letter.  (*See* August 19 Letter at 1.)  It provided additional information regarding the Kolber Defendants' position that the Debtors' claims against them were frivolous, and again threatened to seek Rule 11 sanctions if the proceeding was not dismissed.

On September 30, 2011, the Kolber Defendants filed an answer to the *Complaint*, and by stipulation dated October 18, 2011, they agreed with Spa Chakra to dismiss Counts VII through IX.  (*Stipulation of Dismissal*, dated Oct. 18, 2011 (ECF Doc. # 10).)  The dismissed claims included the two RICO claims leaving only the breach of contract, fraud and conspiracy claims against the Kolber Defendants.

The parties engaged in discovery and participated in conferences with the Court.  They subsequently stipulated to dismiss the balance of the *Complaint* as to the Kolber Defendants on July 16, 2012.  (*Stipulation of Dismissal Pursuant to Fed. R. Bankr. P. 7041 and Fed. R. Civ. P. 41(A)(1)(A)(II)*, dated, July 16, 2012 (ECF Doc.# 15).) [7]  The stipulation expressly reserved the Kolber Defendants' right to seek sanctions under Rule 11 of the Federal Rules of Civil Procedure (the "Civil Rules").[8]  (*Id.* at ¶ 6.)

---

[7]      The Debtor and the Cornelia Defendants stipulated to dismiss their claims, *inter se*, four days later, (*Stipulation of Dismissal Pursuant to Fed. R. Bankr. P. 7041 and Fed. R. Civ. P. 41(A)(1)(A)(II)*, dated, July 20, 2012 (ECF Doc.# 16)), and the Debtor settled with the Terbell Defendants for $10,000.  (*See Debtor's Motion for the Entry of an Order Approving Settlement with Terbell Partners, Ltd. and Harriette A. Terbell Pursuant to Federal Rule of Bankruptcy Procedure 9019*, dated Aug. 21, 2012 (ECF Doc. # 17).)  The adversary proceeding was closed pursuant to a docket entry on October 11, 2012.  The chapter 11 case was dismissed by *Order Granting Motion to Dismiss Chapter 11 Bankruptcy Cases of Spa Chakra, Inc., Et. Al., and Authorizing Pro-Rata Distribution of Remaining Estate Funds*, dated December 13, 2012 (Main Case ECF Doc. # 342).  The Court retained jurisdiction "with respect to any matters, claims, rights or disputes arising from or relating to the implementation of any Order of this Court."  (*Id.* at ¶ 5.)

[8]      The parties' stipulation did not reserve the Movants' right to seek sanctions on any other basis, but neither Neiger nor Bodner has opposed the request for sanctions under 28 U.S.C. § 1927 and the Court's inherent authority on this basis.

The Kolber Defendants filed the Motion on October 18, 2012.[9]  The Movants contend that the suit was frivolous and extortionate.  A great deal of the Motion contests the merits of the fraud claims and damage theory pointing primarily (but not exclusively) to evidence that surfaced through depositions after the adversary proceeding was filed.  (*See Kolber Brief* at 5-10, 18-21.)  The Movants insist that Neiger would have uncovered these facts had it conducted a proper investigation.  They also argue that Neiger dragged the suit out and tried to settle it even after discovering that it lacked merit.  (*Id.* at 10.)

The Kolber Defendants contend the claims were objectively unreasonable for several reasons.  Among them, the *Complaint* included a breach of contract claim, but the Kolber Defendants were not parties to the contract (the Agreement) that was breached.  (*Id.* at 16.)  In addition, the *Complaint* failed to identify any representations made by the Kolber Defendants, (*id.* at 16-17), there was no basis to allege that George Kolber was an "insider" of Cornelia or the Debtor, (*id.* at 17-18), and the conspiracy claims were objectively unreasonable because there was never any indication of an explicit agreement between George Kolber and anyone.  (*Id.* at 21.)  Finally, they maintain that the lawsuit was brought for the improper purpose of extorting a settlement.  (*Id.* at 22-23.)

Neiger opposed the Bankruptcy Rule 9011 aspect of the Motion on procedural and substantive grounds, but did not address the request for sanctions under 28 U.S.C. § 1927 or the Court's inherent authority.  Procedurally, Neiger contended (1) the Motion should be denied because the Kolber Defendants failed to comply with Bankruptcy Rule 9011(c)(1)'s "safe

---

[9]       The Kolber Defendants have never filed proof of service of the Motion.  In addition, they served their reply papers on "all counsel of record via ECF."  (*Certificate of Service* at ¶ 3 (ECF Doc. # 32).)  The *Certificate of Service* is inadequate for two reasons.  It does not identify who was served, and this Court has not adopted a local rule authorizing service by ECF as required by FED. R CIV. P. 5(b)(3).

harbor" provision and, alternatively, (2) the Motion should be denied as untimely because it was

filed after the Adversary Proceeding had been dismissed and was not filed promptly after the

safe harbor period expired.  (*See Opposition* at 3, 11-18.)

Substantively, Neiger provided little.  Edward submitted a declaration that addressed the

history and provided support for the procedural objection.  (*See Declaration of Edward E.*

*Neiger, Esq. in Support of Objection of Neiger LLP to Motion of GVK Limited Partners, Kolber*

*Properties, LLC and George Kolber for Sanctions*, dated Nov. 30, 2012 ("*Neiger Declaration*")

(ECF Doc. # 26).)  Bodner also submitted a declaration which was intended to respond to the

Kolber Defendants' substantive charges.  (*See Declaration of Jonathan S. Bodner, Esq. in*

*Support of Objection of Neiger LLP to Motion of GVK Limited Partners, Kolber Properties, LLC*

*and George Kolber for Sanctions*, dated Nov. 30, 2012 ("*Bodner Declaration*") (ECF Doc. #

27).)  I will return to the *Bodner Declaration* later.

After receiving the motion papers, the Court issued an order scheduling oral argument

and granting the parties an opportunity to submit supplemental briefs on the following issues:

(1) whether the Court may entertain the relief sought in the Motion under 28 U.S.C. § 1927 or its

inherent authority if it found that the Motion did not comply with the "safe harbor" provision or

was untimely under Bankruptcy Rule 9011, and (2) whether the bankruptcy court is a "court of

the United States" authorized to award sanctions under 28 U.S.C. § 1927.  (*See Order*

*Scheduling Oral Argument on Motion for Sanctions*, dated Jan. 17, 2013 (ECF Doc. # 33).)  The

Movants and Neiger submitted simultaneous supplemental briefs on January 31, 2013, (*see* ECF

Doc. ## 35, 36), and both answered the questions in the affirmative.[10]  As a result, oral argument was cancelled.

The scheduling order prompted inquiry by the Court regarding whether the Movants were also seeking sanctions against Bodner.  Up to this point, he had not submitted any briefing on his own behalf.  The Notice of Motion did not identify who the Kolber Defendants were seeking sanctions against, (*see* ECF Doc. # 22, Part 1), the body of the Motion included only one reference to Bodner in a footnote, (*see Kolber Brief* at 3 n.1), and the proposed order attached to the Motion would have imposed sanctions against Neiger LLP only.  (*See* ECF Doc. # 22, Part 8.)  Finally, the Kolber Defendants failed to file an affidavit of service indicating that they had served Bodner with the Motion.  The Movants responded that they were also seeking sanctions against Bodner, and they subsequently filed a letter dated February 25, 2013, stating that they were seeking sanctions against (1) Bodner, individually, (2) Edward Neiger, individually, and (3) Neiger LLP.  (ECF Doc. # 37.)  By letter dated February 25, 2013, Bodner asked the Court to stay the proceeding until he could engage counsel, submit opposition papers and be heard.  (ECF Doc. # 38.)  The Court granted Bodner's request and allowed him sixty days to file any opposition to the Motion.  (ECF Doc. # 39.)

Bodner submitted his opposition on March 7, 2013.  (*See Memorandum of Law Submitted on Behalf of Jonathan S. Bodner in Response to this Court's Directive of February 26, 2013*, dated Mar. 7, 2013 ("*Bodner Opposition*") (ECF Doc. # 40).)  He focused on the lack of due process afforded to him, and pointed to the absence of specific allegations against him in the Motion.  (*Id.* at 2 ("The Movants have not served Mr. Bodner with a single pleading or other

---

[10]     Neiger's submission also argued, for the first time, that sanctions should not be imposed under 28 U.S.C. § 1927 and the Court's inherent authority.

document seeking sanctions against him or setting forth a single allegation of any wrongdoing on his part").)  As such, Bodner contested the Court's personal jurisdiction to award sanctions against him, and challenged the Motion on due process grounds.  Substantively, Bodner incorporated by reference Neiger's arguments in opposition to the Motion.  (*Id.*)  Additionally, he contended that he could not be sanctioned under Rule 11 because he did not sign the *Complaint*, (*id.* at 8), and he could not be sanctioned under § 1927 or the Court's inherent powers because the Motion failed to allege a single fact that supported a finding that he had acted in bad faith.  (*See id.* at 10-11.)  Furthermore, as an employee of Neiger, he could not be held personally liable for the conduct of his employer.  (*Id.* at 6-7.)[11]

Having received and reviewed the parties' submissions, the Court issued an order scheduling oral argument for June 13, 2013.  (*Order Scheduling Oral Argument on Motion for Sanctions*, dated June 3, 2013 (ECF Doc. # 48).)  Argument was limited to the portion of the Motion seeking sanctions under § 1927 and inherent powers, as well as Bodner's jurisdictional and due process defenses.

The Court concludes that the Movants have failed to comply with the Bankruptcy Rule 9011 safe harbor requirement and have failed to show the bad faith necessary to impose sanctions under 28 U.S.C. § 1927 or the Court's inherent powers.  In light of this conclusion, the Court does not decide Bodner's personal objections.

---

[11]    On March 14, 2013, Movant's counsel submitted a letter to the Court seeking leave to submit a response to the *Bodner Opposition*, (*see* ECF Doc. # 46), which Bodner opposed.  (*See* ECF Doc. ## 44, 45.)  The Court granted counsel an opportunity to submit a limited reply to address Bodner's contention that he was not served in accordance with Bankruptcy Rule 9014(b).  (ECF Doc. # 46.)  The Movants filed their reply on March 27, 2013.  (*See Reply Brief to Opposition of Jonathan Bodner, Esq. and in Further Support of Motion by GVK Limited Partners, Kolber Properties, LLC, and George Kolber for Sanctions*, dated Mar. 27, 2013 (ECF Doc. # 47).)

# DISCUSSION

## A.    Bankruptcy Rule 9011

An attorney or unrepresented party that presents a pleading to the court is deemed to certify to the best of his knowledge and after reasonable inquiry that (1) the pleading is not presented for an improper purpose, (2) the claims, defenses, and other legal contentions are warranted by existing law or a nonfrivolous argument for the extension, modification or reversal of existing law or the establishment of new law and (3) the allegations and other factual contentions have evidentiary support or are likely to have support after further investigation. FED. R. BANKR. P. 9011(b).  Bankruptcy Rule 9011 authorizes a court to award sanctions for any violation of this certification, but the party seeking sanctions must follow certain procedural requirements.  In particular, Bankruptcy Rule 9011 contains a "safe harbor" provision that prohibits the filing or presentation of a motion for sanctions if the offending party withdraws or corrects the challenged paper within twenty-one days after service of the motion on the offending party:

> A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b).  It shall be served as provided in Rule 7004.  The motion for sanctions may not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected . . . .

FED. R. BANKR. P. 9011(c)(1)(A).  The safe harbor provision was added to Bankruptcy Rule 9011 in 1997 to conform to the 1993 changes to Civil Rule 11 that added a similar safe harbor provision.  FED. R. BANKR. P. 9011 advisory committee note to 1997 amendment.[12]  Hence, the

---

[12]    Civil Rule 11(c)(2) states in pertinent part:

A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b).  The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention,

Court's interpretation of the Bankruptcy Rule 9011 safe harbor provision is informed by Civil Rule 11 jurisprudence. *Klein v. Wilson, Elser, Moskowitz, Edelman & Dicker (In re Highgate Equities, Ltd.)*, 279 F.3d 148, 151 (2d Cir. 2002); *Baker v. Latham Sparrowbush Assocs. (In re Cohoes Indus. Terminal, Inc.)*, 931 F.2d 222, 227 (2d Cir. 1991); *In re Obasi*, No. 10-10494 (SHL), 2011 WL 6336153, at *4 n.6 (Bankr. S.D.N.Y. Dec. 19, 2011).

The Second Circuit Court of Appeals recently examined the Rule 11 "safe harbor" provision in *Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170 (2d Cir. 2012). There, the defendant sent the plaintiff a letter requesting that the complaint be withdrawn and threatening to file a Rule 11 sanctions motion. *Id.* at 174. The letter attached a proposed Rule 11 notice of motion that listed six grounds why the lawsuit was frivolous.[13] The notice of motion referenced a memorandum of law and two affidavits that were not attached, but the letter contained citations to legal authorities. *Id.*

After the plaintiff failed to withdraw the complaint, the defendant sought summary judgment, and moved separately for sanctions under Rule 11 and 28 U.S.C. § 1927. The new notice of motion listed four grounds for the defendant's assertion that the lawsuit was frivolous, three of which were among the six listed in the defendant's earlier notice of motion. The fourth ground was part of the request for sanctions under § 1927. *Id.* The district court granted the defendant's summary judgment motion and granted the sanctions motion under Rule 11, but not § 1927. *Id.*

---

or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets. . . .

[13]    The notice of motion and letter that were at issue in *Star Mark* are annexed as Exhibit 1 to the *Declaration of Russell S. Burnside, Esq. in Further Support of Motion of GVK Limited Partners, Kolber Properties, LLC and George Kolber for Sanctions*, dated Dec. 14, 2012 (ECF Doc. # 31).

On appeal, the plaintiff argued, among other things, that the defendant's service of an "informal warning letter with a notice of Rule 11 motion, as opposed to a formal motion," failed to satisfy the safe harbor requirement. *Id.* at 175. The Court of Appeals affirmed the district court and held that the defendant's Rule 11 letter together with the attached notice of motion satisfied the requirements of the Rule 11 safe harbor provision. *Id.* at 176.

The Court began with a discussion of due process. "Rule 11 and principals of due process require that 'the subject of a sanctions motion be informed of: (1) the source of authority for the sanctions being considered; and (2) the specific conduct or omission for which the sanctions are being considered so that the subject of the sanctions motion can prepare a defense.'" *Id.* at 175 (quoting *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 334 (2d Cir. 1999)). The Movants' July 20 Letter, together with the August 19 Letter, contained sufficient information to apprise Neiger of their intention to seek Rule 11 sanctions and the bases of their position.

The Court next considered the "strict procedural requirement" imposed on the party seeking sanctions. *Id.* (citing *Perpetual Sec., Inc. v. Tang*, 290 F.3d 132, 142 n.4 (2d Cir. 2002)). Importantly, "[a]n informal warning in the form of a letter without service of a separate Rule 11 motion is not sufficient to trigger the 21-day safe harbor period." *Id.* (citing *L.B. Foster Co. v. Am. Piles, Inc.*, 138 F.3d 81, 89-90 (2d Cir. 1998)). One of the decisions the Court cited, *Gal v. Viacom Int'l, Inc.*, 403 F. Supp. 2d 294 (S.D.N.Y. 2005), denied the defendants' Rule 11 motion for sanctions because they used a detailed letter with the heading "Rule 11 Safe Harbor Letter" instead of a motion. *Id.* at 309 ("[T]he plain language of the rule states explicitly that service of the motion itself is required to begin the safe harbor clock—the rule says nothing about the use of letters."). Nevertheless, the "motion" did not have to be supported by a

memorandum of law, affidavits and exhibits.  The Court observed that Civil Rule 7(b) only requires a "motion" to be in writing (unless made at a hearing) and state with particularity the grounds for seeking the order and the relief sought.  *Star Mark*, 682 F.3d at 176.

The defendant in *Star Mark* "did more than send a Rule 11 letter—it attached to its letter a copy of its notice of motion for sanctions."  *Id*. at 176.  The Court reasoned that the defendant's notice of motion and letter, together, satisfied the "safe harbor" requirement.  The plaintiff received notice of the defendant's intention to seek Rule 11 sanctions and the six reasons why the defendant claimed the pleading violated Rule 11.  *See id.* at 177.  Furthermore, the sanctions motion filed with the district court "rested on substantially the grounds set forth in the earlier notice of motion."  *Id.* at 176.

*Star Mark* makes clear that a warning letter unaccompanied by a "motion" is insufficient to trigger the 21-day safe harbor period.  Yet that is precisely what happened in this case.  Neither the July 20 Letter nor the August 19 Letter included a separate motion.  Although the Kolber Defendants contend that the letters were the motions, each letter included a conspicuous heading that it was for settlement purposes *only* pursuant to FED. R. EVID. 408, and if they were for "settlement purposes *only*," they could not also serve the purpose of a motion.  In addition, Rule 9011(c)(1) requires the motion to "be served as provided in Rule 7004," but both letters were sent to Bodner by email.  Thus, the "motion" was never served on Neiger and was not "served" on Bodner under any of the methods specified by Rule 7004.  Finally, the letters did not include a caption as required by Civil Rules 7(b)(2) and 10(a).

Accordingly, neither the July 20 Letter nor the August 19 Letter constituted a motion under Civil Rule 7(b) or under *Star Mark* for purposes of Rule 11.  Because the Movants failed

to comply with the safe harbor provision, the Motion is denied with respect to the relief sought under Bankruptcy Rule 9011 and Civil Rule 11.  The Court has considered the Movants' remaining arguments on this point, and concludes that they lack merit.

**B.      28 U.S.C. § 1927 and the Court's Inherent Authority**

Section 1927 authorizes a "court of the United States" to award attorney's fees and other excess costs and expenses against an attorney or other party authorized to practice before the courts who "multiplies the proceedings in any case unreasonably and vexatiously."  28 U.S.C. § 1927.[14]  "The purpose of the statute is to deter unnecessary delays in litigation."  *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers of Am., AFL-CIO*, 948 F.2d 1338, 1345 (2d Cir. 1991) (internal quotation marks omitted).  It imposes an obligation on attorneys to avoid dilatory tactics throughout the entire litigation, and "bad faith is the touchstone of an award under this statute."  *Id.*

There are a few noteworthy differences regarding the imposition of sanctions under § 1927 as opposed to Rule 11.  First, Rule 11 employs an objective standard of reasonableness, but § 1927 imposes a more difficult standard of "subjective bad faith by counsel."  *Id.* at 1346.  Second, "misconduct under Rule 11 must be judged as of the time the paper was signed, whereas § 1927 invites attention to a course of conduct" throughout the litigation.  *Id.*  Third, although not pertinent to this case, "Rule 11 sanctions may be imposed on both counsel and client, while § 1927 applies only to counsel."  *Id.* at 1345-46.

---

[14]      There is some controversy regarding whether a bankruptcy court is a "court of the United States" under § 1927.  *See In re Schaefer Salt Recovery, Inc.*, 542 F.3d 90, 102-04 (3d Cir. 2008) (citing cases).  However, in *Cohoes Indus. Terminal*, the Second Circuit ruled that a bankruptcy court may impose sanctions under 28 U.S.C. § 1927.  931 F.2d at 230.

A court may also impose sanctions pursuant to its inherent power, which "derives from the fact that courts are 'vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates.'"[15] *Schlaifer*, 194 F.3d at 336 (quoting *Chambers v. Nasco, Inc.*, 501 U.S. 32, 43 (1991)). "One component of a court's inherent power is the power to assess costs and attorneys' fees against either the client or his attorney where a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Int. Bhd. of Teamsters*, 948 F.2d at 1345 (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258-59 (1975)). "[I]n practice, 'the only meaningful difference between an award made under § 1927 and one made pursuant to the court's inherent power is that awards under § 1927 are made only against attorneys or other persons authorized to practice before the courts while an award made under the court's inherent power may be made against an attorney, a party, or both.'" *Schlaifer*, 194 F.3d at 336 (quoting *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986)). When possible, however, the preference is to impose sanctions under a statute or rule. *See Chambers*, 501 U.S. at 50 ("[W]hen there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power. But if in the informed discretion of the court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power.").

Courts in this Circuit construe § 1927 "narrowly and with great caution, so as not to stifle the enthusiasm or chill the creativity that is the very lifeblood of the law." *Mone v. Comm'r of Internal Revenue*, 774 F.2d 570, 574 (2d Cir. 1985) (internal quotation marks omitted); *accord Romeo v. Sherry*, 308 F. Supp. 2d 128, 148 (E.D.N.Y. 2004). Likewise, the Supreme Court has

---

[15] "'Bankruptcy courts, like Article III courts, enjoy inherent power to sanction parties for improper conduct.'" *In re Green*, 422 B.R. 469, 473-74 (Bankr. S.D.N.Y. 2010) (quoting *Mapother & Mapother, P.S.C. v. Cooper (In re Downs)*, 103 F.3d 472, 477 (6th Cir. 1996)).

admonished that "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion," *Chambers*, 501 U.S. at 44, and "great caution." *Id.* at 43 (internal quotation marks omitted). "To impose sanctions under either authority, a court must find clear evidence that (1) the offending party's claims were entirely without color, and (2) the claims were brought in bad faith—that is, 'motivated by improper purposes such as harassment or delay.'" *Eisemann v. Greene*, 204 F.3d 393, 396 (2d Cir. 2000) (quoting *Schlaifer*, 194 F.3d at 336)); *accord Pacific Elec. Wire & Cable Co., Ltd. v. Set Top Int'l Inc.*, No. 03 Civ. 9623 (JFK), 2005 WL 2036033, at * 5 (S.D.N.Y. Aug. 23, 2005). Notably, the "'[t]he test is conjunctive and neither meritlessness alone nor improper purpose alone will suffice.'" *Pacific Elec. Wire & Cable Co.*, 2005 WL 2036033, at *5 (quoting *Sierra Club v. U.S. Army Corps of Eng'rs*, 776 F.2d 383, 390 (2d Cir. 1985)). Moreover, "'[t]he court's factual findings of bad faith must be characterized by a high degree of specificity.'" *Schlaifer*, 194 F.3d at 338 (quoting *Milltex Indus. Corp. v. Jacquard Lace Co., Ltd.*, 55 F.3d 34, 38 (2d Cir. 1995)).

### 1.   Color

"'A claim is entirely without color when it lacks *any* legal or factual basis.'" *Id.* at 337 (quoting *Sierra Club*, 776 F.2d at 390). "Conversely, a claim is colorable 'when it has some legal and factual support, considered in light of the reasonable beliefs of the individual making the claim.'" *Id.* (quoting *Nemeroff v. Abelson*, 620 F.2d 339, 348 (2d Cir.1980) (*per curium*)). More specifically,

> [t]he question is whether a reasonable attorney—and for our immediate purposes, a reasonable plaintiff as well—could have concluded that facts supporting the claim *might be established,* not whether such facts actually *had been established*. Thus, as an initial matter, we note that a claim that fails as a matter of law is not necessarily lacking *any* basis at all. A claim is colorable when it reasonably *might* be successful, while a claim lacks a colorable basis when it is utterly devoid of a legal or factual basis. Accordingly, judgment as a matter of law against a claim is

a necessary, but not a sufficient, condition for a finding of a total lack of a colorable basis.

*Id.* (internal quotation marks and citation omitted) (emphases in original).

The Motion demonstrated that the claims asserted against the Kolber Defendants lacked a colorable basis. It was no secret that GVK and Kolber had made loans to Cornelia, the loans were in default, and Cornelia owed them $1,285,009.02 as of February 9, 2009. The following allegations, all made on information and belief, purported to tie the Kolber Defendants to the breach of contract, fraud, conspiracy and RICO claims:

1.   They "pressured Cornelia to enter into the Cornelia Transaction in efforts to have the GVK Loans, which were in default, repaid and satisfied." (*Complaint* at ¶ 37.)

2.   They "had actual and/or constructive knowledge of misrepresentations in the APA, but facilitated and assisted in the consummation of the Cornelia Transaction in order to benefit from the Guaranties." (*Id.* at ¶ 38.)

3.   They "(i) solicited the services of Terbell Partners and Terbell to act as the broker dealer in connection with the Cornelia Transaction; (ii) had prior business dealings and/or personal relationships with Terbell Partners and Terbell; and (iii) paid Terbell Partners and Terbell's fees for such services."[16] (*Id.* at ¶ 39.)

4.   "Kolber and Aidekman have a family relationship." (*Id.* at ¶ 12 n.4.)

These meager allegations paint the picture of a creditor who was seeking repayment of a lawful, if not by Cornelia then by Spa Chakra. The *Complaint* does not allege that the Kolber Defendants received any payment in connection with the transaction; in fact, they went out of pocket by paying the broker. As noted, the Kolber Defendants were not parties to the Agreement, yet the *Complaint* named them as defendants on the breach of contract claim. There is no colorable basis to support a breach of contract claim against defendants who were not parties to the contract that was breached.

---

[16]   The footnote to paragraph 39 in the *Complaint* points to Section 4.21 of the Agreement, which states that Terbell Partners, Ltd.'s "fees shall be for the account of GVK Limited Partnership."

The *Complaint* also named them as defendants on the various fraud and RICO counts relating to misrepresentations or omissions in the Agreement, but the *Complaint* did not even allege that the Kolber Defendants made any misrepresentations.  Instead, paragraph 38 alleged upon information and belief that they had actual or constructive knowledge of misrepresentations in the Agreement.  Again, it is difficult to imagine how the fraud and misrepresentation claims *might be established* against the Kolber Defendants when the alleged misrepresentations were made by the Debtor or Cornelia in the Agreement, and Neiger never contended or alleged that the Kolber Defendants had a duty to speak.  *See Jolly King Restaurant, Inc. v. Hershey Chan Realty, Inc.*, 625 N.Y.S.2d 35, 35 (N.Y. App. Div. 1995) ("Absent a duty to speak, nondisclosure does not ordinarily constitute fraud.")

Finally, the *Complaint* charged the Kolber Defendants with participating in a conspiracy to defraud Spa Chakra because they insisted on payment of their loans or additional security in the form of the Guaranty, pressed the transaction with knowledge of the misrepresentations in the Agreement and paid the broker to facilitate the transaction.  The Kolber Defendants explained in detail why the underlying misrepresentation claims lacked color.  (*See Kolber Brief* at 16-21.)  If the underlying tort claims lacked color, the conspiracy to commit those torts also lacked color.  *See Alexander & Alexander of New York, Inc. v. Fritzen*, 503 N.E.2d 102, 103 (N.Y. 1986) ("Allegations of conspiracy are permitted only to connect the actions of separate defendants with an otherwise actionable tort.")  Neiger did not respond to the Kolber Defendants' refutation of the fraud claims, and instead, implied that all of the claims had color based upon Bodner's thorough pre-filing investigation as reflected in his declaration.  (*See Kolber Brief* at 10-20; *Neiger Declaration* at ¶ 6.)

The *Bodner Declaration*, however, contained little more than vague statements regarding what he did. It offered no rationale for alleging the specific claims against the Kolber Defendants in the *Complaint*:

> In my role as an attorney employed by Special Counsel, I, along with other Neiger LLP attorneys, participated in the following tasks, without limitation:
>
> • Conducted numerous interviews and communications with Michael Canizales, CEO of the Debtors, which interviews gleaned facts that substantiated claims set forth in the Complaint;
>
> • Reviewed and analyzed an attorney-client privileged memorandum prepared by the Debtors' general counsel, which memorandum detailed various legal claims including several breaches of representations, warranties and covenants contained in that certain Asset Purchase Agreement (the "APA"), entered into by and between Cornelia Fifth Avenue and Spa Chakra and dated on February 5, 2009;
>
> • Reviewed and analyzed the APA itself, which among other things, provides at Section 4.21 that George Kolber/Defendants were to pay the sole broker's fee to the APA transaction;
>
> • Reviewed and analyzed certain of the Debtors' files;
>
> • Reviewed and analyzed various pleadings and filings filed in the Debtors' bankruptcy cases, including but not limited to the Debtors' statements and schedules; and
>
> • Reviewed and analyzed pleadings and public filings, including but not limited to pleadings filed in the action styled *Battino, et al. v. Cornelia Fifth Avenue, LLC, et al.,* SDNY DC Case 09-4113 (JPO).

(*Bodner Declaration* at ¶ 5.)

None of this explains why Bodner, Edward or Neiger believed that the breach of contract, fraud, RICO and conspiracy claims against the Kolber Defendants were colorable or provides a basis for the Court to infer that they were.

### 2.    Bad Faith

The bad faith element "is meant to strike a balance between the vigorous pursuit of litigation and the right to be free of litigation that is undertaken in 'in bad faith, vexatiously,

wantonly, or for oppressive reasons.'" *United States v. Seltzer*, 227 F.3d 36, 40 (2d Cir. 2000)

(quoting *Oliveri*, 803 F.2d at 1272).  "Bad faith can be inferred when the actions taken are 'so

completely without merit as to require the conclusion that they must have been undertaken for

some improper purpose.'" *Schlaifer*, 194 F.3d at 338 (quoting *New York v. Operation Rescue

Nat'l*, 80 F.3d 64, 72 (2d Cir. 1996)).  The Second Circuit has "restrictively" interpreted the bad

faith standard, *Eisemann*, 204 F.3d at 396, requiring a "'*high degree of specificity in the factual

findings of the lower courts*.'"  *Id.* at 396 (quoting *Dow Chem. Pac. Ltd. v. Rascator Maritime

S.A.*, 782 F.2d 329, 344 (2d Cir. 1986)) (emphasis in original).  The type of conduct found to

constitute "bad faith" and merit sanctions in this Circuit includes:

> resubmitting a motion that had previously been denied; bringing a motion based
> on 'facts' the opposite of which were previously found by the court; making
> several insupportable bias recusal motions and repeated motions to reargue;
> continually engaging in obfuscation of the issues, hyperbolism and groundless
> presumptions in addition to insinuating that the court was biased; and waiting
> until the eve of trial before making a jury demand.

*Keller v. Mobile Corp.*, 55 F.3d 94, 99 (2d Cir. 1995) (internal quotation marks omitted); *see

also Dow Chem. Pac. Ltd.*, 782 F.2d at 345 ("The appropriate focus for the court in applying the

bad-faith exception to the American Rule is the conduct of the party in instigating or maintaining

the litigation, for an assessment of whether there has been substantive bad faith as exhibited by,

for example, its pursuit of frivolous contentions, or procedural bad faith as exhibited by, for

example, its use of oppressive tactics or its willful violations of court orders.").

Finally, "'bad faith is personal,'" *Dow Chem. Pac. Ltd.*, 782 F.2d at 344 (quoting

*Browning Debenture Holders' Comm. V. DASA Corp.*, 560 F.2d 1078, 1089 (2d Cir. 1977)).

There must be "clear evidence of bad faith by a particular party . . . .  A finding that one

defendant has acted in bad faith in conducting litigation does not justify an award of fees against

a codefendant."  *Id.*

Here, the statements in the Motion and the exhibits it attaches do not support a finding of bad faith. Although the Court has concluded that the claims against the Kolber Defendants lacked color, bad faith must be "measured not only by the merits (or lack thereof) of the conduct at issue, but also by the attorney's purpose in pursuing that conduct." *Herzlinger v. Nichter*, No. 09 Civ. 00192 (JSG)(PED), 2011 WL 4585251, at *5 (S.D.N.Y. Sept. 8, 2011), *adopted by* 2011 WL 4575126 (S.D.N.Y. Oct. 3, 2011). The conduct at issue must have been taken to "unreasonably and vexatiously" multiply proceedings, 28 U.S.C. § 1927, or for some other improper purpose. *Cf. Schlaifer*, 194 F.3d at 339-340 (reasoning, *inter alia*, that (1) "pecuniary gain as a motivation for legal actions" and "pursuit of a relatively low-value claim" does not "necessarily impl[y] some sort of bad faith;" (2) "hard-nosed lawyering" does not equate to harassment; and (3) although a claim was "objectively frivolous" as indicated by the plaintiff's own documents and witnesses, "we cannot conclude that the continuation of [plaintiff's] action was anything more than the result of poor legal judgment. . . . [T]here is no evidence to suggest that they had utterly no basis for their subjective belief in the merits of their case.").

Neither Neiger nor Bodner unreasonably or vexatiously multiplied the proceedings in this case. The *Complaint* was filed on May 22, 2011, and the Kolber Defendants filed their Answer on September 30, 2011. The Kolber Defendants never moved to dismiss the claims based on legal insufficiency and there was no other motion practice. Instead, both sides participated in Court conferences and proposed the *Joint Scheduling Order for the Plaintiff and the Kolber Defendants*, dated Feb. 16, 2012 (ECF Doc. # 13) and a revised scheduling order extending fact discovery. (*See Joint Scheduling Order*, dated Apr. 19, 2012 (ECF Doc. # 14).) The Motion recounts a handful of depositions in an action involving several other parties who have not sought sanctions or asserted that the Spa Chakra asserted frivolous claims against them. Finally,

22

after Neiger reached the conclusion that the claims against the Kolber Defendants were not worthy of pursuit, (*see Neiger Declaration* at ¶ 18), the plaintiff agreed to dismiss the claims on July 17, 2012, a little more than a year after the suit was commenced.[17]

While the Movants primarily rely on the lack of color to imply bad faith, they also contend that Neiger commenced and prosecuted the Adversary Proceeding for the improper purpose of extorting a settlement. (*See Kolber Brief* at 3, 22-23, 30.) For support, they point to a declaration submitted by Cornelia's principal, Richard Aidekman, who asked Bodner why he was bothering to sue Cornelia since it was under siege from creditors, essentially out of business, and Aidekman himself was bankrupt. (*See Declaration of Richard Aidekman in Support of Motion by GVK Limited Partners, Kolber Properties, LLC, and George Kolber for Sanctions*, dated Oct. 17, 2012, at ¶ 9 (ECF Doc. # 22, Part 7).) In response:

> Mr. Bodner told me that, due to my family relationship with George Kolber (an incorrect conclusion), and that by keeping pressure on me, he hoped to encourage Kolber to settle the various claims against them.

(*Id.* at ¶ 10.)

That Bodner or Neiger was trying to achieve a settlement with the Kolber Defendants, and was looking for leverage, is hardly remarkable or objectionable. Bodner's response did not state or imply that he believed the claims against the Kolber Defendants (or the Cornelia Defendants) lacked merit. At most, it suggested his belief that the claims against Aidekman and Cornelia might be uncollectible. But an uncollectible claim is not an unmeritorious claim.

---

[17] At oral argument, the Movants maintained that Neiger should have withdrawn the claims following the deposition of Michael Canizales, Spa Chakra's CEO. Canizales testified that Kolber did not make any representations regarding Cornelia's gift card liability, (*Kolber Brief*, Ex. F at 142), or any of the representations contained in the Agreement. (*Id.*, Ex. F at 212.) The deposition was held on March 15, 2012, and the transcript was prepared on April 2, 2012, (*see id*, Ex. F), the same day as the last deposition transcript attached to the Kolber Brief. (*See id*. Ex. E.) The Plaintiff dismissed the claims against the Kolber Defendants three and one half months later, and the Movants did not identify any activity, vexatious or otherwise, during the interim.

In the final analysis, Neiger and its attorneys showed poor legal judgment but "there is no evidence to suggest that they had utterly no basis for their subjective belief in the merits of their case." *Schlaifer*, 194 F.3d at 340.  Furthermore, I cannot conclude on this record that the conduct in this case was so frivolous as to compel the inference that it was undertaken in bad faith.  *See Eisemann*, 204 F.3d at 396 (reversing district court's imposition of sanctions because, among other things, its bad faith determination "rested almost entirely on [the motion's] lack of merit"); *Adkins v. General Motors Corp.*, No. 03-CV-3613 (JS)(ARL), 2011 WL 1322398, at *2-3 (finding that the plaintiff's alleged frivolous conduct "is insufficiently egregious to warrant a conclusion that Plaintiff or his Attorneys litigated this case in bad faith"), *affirmed* 479 Fed. Appx. 386 (2d Cir. 2012).  This is not intended to condone what Neiger did, and the result might well have been different under the objective standards of Bankruptcy Rule 9011.  The Movants have nevertheless failed to satisfy the criteria to support the imposition of sanctions under 28 U.S.C. § 1927 or the Court's inherent authority, and the Motion is denied.  Settle order on notice.

Dated: New York, New York
            June 27, 2013

/s/ *Stuart M. Bernstein*
STUART M. BERNSTEIN
United States Bankruptcy Judge

24